Argued November 7; reversed November 27, 1934

FLESHER *v.* CRAFT ET AL.

(38 P. (2d) 59)

*Wallace Carson,* of Salem (Weatherford & Wyatt, of Albany, and Carson & Carson, of Salem, on the brief), for appellants.

*W. C. Winslow,* of Salem, for respondent Flesher.

*Avery Thompson,* of Salem, for respondent Rhoten.

BAILEY, J. The plaintiff, A. A. Flesher, brings this suit against the defendants J. A. Craft and Minnie D. Craft, his wife, to compel specific performance of a contract for the exchange of real property, entered into between plaintiff and the defendant J. A. Craft. The decree of the circuit court was in favor of the plaintiff and against said defendants; from which decree the defendants Craft appeal.

On March 24, 1933, a contract was entered into between A. A. Flesher and J. A. Craft, whereby Craft agreed to transfer a 164-acre farm near Scio, Oregon, without specifically describing the same, and certain personal property, in exchange for a house and lot in Salem, Oregon. The contract recites that the Scio farm is "encumbered by taxes and a mortgage to Travelers Life Insurance Company and there is a chattel mortgage on the crop thereon". Apparently those mortgages were executed by J. A. Craft and his wife, for the contract states that Flesher agrees within 30 days of the execution thereof to obtain from the mortgagee a release of the Crafts from "personal liability or liability for a deficiency judgment on account of either said real property mortgage or the chattel mortgage now against the crop and personal property on the Scio farm".

It was stated in the contract that Flesher was obtaining the house and lot from Orchard Development and Land Company, encumbered by a $400 mortgage, and that the interest thereon to the date of the contract was to be paid by Flesher.

It was agreed that both parties would immediately cause to be executed conveyances of their respective property to the other party, or, in the case of the property to be received by Craft, "to him or such other

person as he directs'', and to place such conveyances in the hands of George A. Rhoten as escrow agent, with direction to deliver the deed and bill of sale of the Scio farm and personal property to Flesher, and the deed to the Salem house and lot to Craft on October 1, 1933, or before that time, if the tenant on the farm property should sooner abandon the same. The deliveries to be made by the escrow holder were, however, based upon the stipulation that the parties to the contract should have completed their respective agreements. The contract further stipulated that ''it is agreed that each of the parties will forthwith cause the abstract of title of their respective properties to be continued to date, and will give the other party an opportunity to have said abstract examined within 30 days from this date. In event said abstract does not show merchantable title in the respective parties, the party whose abstract does not show such merchantable title is given a reasonable time after the objection is pointed out, in which to correct the same''. The escrow holder was further instructed, in the event that either of the parties defaulted in furnishing merchantable title, to return the documents deposited with him to the respective depositors.

Thereafter, on June 13, 1933, the complaint herein was filed by the plaintiff against the Crafts and George A. Rhoten, who was made a party merely because he was the escrow holder. The complaint alleged the execution of the contract, attached a copy thereof as an exhibit, and specifically described the farm land which was referred to generally in the agreement. It further averred that in accordance with the terms of the contract the defendants J. A. Craft and Minnie D. Craft made and executed a deed conveying said farm to the plaintiff, and delivered the same in escrow to the de-

fendant Rhoten, who retained possession of the deed; that the plaintiff proceeded to perform those terms of the contract devolving upon him, but was interfered with by the defendant Craft in the following particular, to wit, that while the plaintiff was attempting to procure from Travelers Life Insurance Company a release of J. A. Craft and Minnie D. Craft from any personal liability on the real property and chattel mortgages referred to in the contract, Craft instructed the insurance company not to furnish the release; and that the insurance company was ready, able and willing to deliver the same except for the interference of the defendant Craft.

The complaint further avers that the plaintiff has "duly and fully performed all the terms of said contract upon his part to be kept and performed, except as it was made impossible to perform the same by virtue of interference on the part of the defendant J. A. Craft"; and that the plaintiff "is now ready, able and willing to complete the performance thereof and has delivered deeds to the property referred to in the contract to be received by said defendants Craft, together with certificate of title, the same being registered under the Torrens act, to the said escrow agent". It is then alleged that the defendants Craft have failed, neglected and refused to proceed with their part of the contract and have instructed the escrow agent not to deliver their deed to the plaintiff but to return the same to said defendants.

The defendants Craft in their answer admitted that they were the owners of the farm land described in the complaint, admitted the execution of the contract, denied that they had failed, neglected or refused to perform their part thereof, and alleged affirmatively that the plaintiff had, in a number of ways, failed to carry

out the terms of the contract imposed upon him. Among the instances of plaintiff's not complying with the terms of the contract enumerated by the defendants Craft were his failure to procure a release from the insurance company of their personal liability on the real property and chattel mortgages, and failure to furnish an abstract of title of the city property within the 30 days provided for in the contract.

The plaintiff's reply denied each and every allegation of the answer except as alleged and set forth in the complaint.

The defendant Rhoten also filed an answer, in which he alleged that he was the escrow holder; that a conveyance of the farm land had been deposited with him by the defendants Craft on March 24, 1933; that a deed to the city property was delivered to him by the plaintiff on April 25 of the same year; and that on April 26 the plaintiff delivered to him a Torrens certificate of title covering the city property.

On the trial of the case the plaintiff introduced the agreement for the exchange of real property, the purported deed executed by the defendants Craft under date of March 24, 1933, in which the name of the grantee was in blank, and which deed was delivered on the same date to the escrow holder, and a purported deed from "Orchard Development Land Company" to Minnie D. Craft (and not J. A. Craft), dated April 25, 1933. The attestation clause of this last instrument was as follows:

"IN WITNESS WHEREOF, ———————————— has caused its Corporate Seal to be affixed and these presents to be subscribed by its President and Secretary this 25th day of April, 1933.

By Charles H. Vick President
Attest: Geo. F. Vick Secretary.''

The corporate seal of Orchard Delevopment and Land Co. appears below the signatures.

Accompanying this was a purported acknowledgment by Charles H. Vick as president of "Orchard Development Land Company", which acknowledgment stated that said Charles H. Vick was personally known to the notary and after being sworn said Vick stated that he was the president of the "Orchard Development Land Company"; that the seal affixed to the instrument was the corporate seal of the said corporation; and that the said instrument was signed and sealed by authority of its board of directors, "and said ————— ——————————— acknowledged said instrument to be the free act and deed of said corporation".

The evidence discloses that no abstract of title to plaintiff's property was ever furnished. It had not, up to the date of the trial, been supplied by plaintiff to the defendants Craft or to the escrow holder. There was, however, offered by plaintiff and admitted in evidence, for what purpose the record does not disclose and our imagination can not supply, an abstract for property not even remotely connected with the properties to be exchanged. The abstract admitted in evidence was apparently withdrawn later, as the record before us does not contain it, and there appears along with the record in this case an abstract for the city property, which abstract is not identified as an exhibit or as having at any time been filed in the case in the circuit court. The trial was held on February 15, 1934, and the certificate of this latter abstract is dated February 27, 1934. The decree was not entered until March 6, of the same year, and the certificate of the trial judge refers to "exhibit 3" as being an abstract.

No attempt was made by the plaintiff to prove the ownership of the property which he was to convey to

the defendants Craft except by the Torrens certificate above mentioned, the admission of which was objected to by the defendants Craft on the ground that the same did not take the place of an abstract; that it was not furnished within 30 days of the date of the contract; and that it did not tend to prove any of the issues in the case. There was an effort by the plaintiff, over the objection of the defendants Craft, to prove that the defendant Rhoten, who was the escrow holder, had waived the furnishing of the abstract and accepted in lieu thereof the Torrens certificate of title.

The plaintiff, after the contract of exchange was executed, proceeded, in apparent good faith, to carry out its terms. He consulted Mr. Green, who had charge of the Commerce Mortgage Securities Company, which in turn was the agent of Travelers Life Insurance Company, about obtaining a release of Mr. and Mrs. Craft from personal liability on the real property and chattel mortgages. In doing so he procured a letter from Mr. and Mrs. Craft to the insurance company in which it was stated that they were making an exchange of property with Mr. Flesher and that it was agreeable to them to have effected their release from such personal liability. In order to accomplish this release the insurance company required a down payment of $100 from Mr. Flesher and in addition a chattel mortgage on certain personal property owned by Flesher. Then for some reason Flesher failed to obtain the release. According to his testimony Mr. Green told him over the telephone that Mr. Craft had countermanded the order. Mr. Green, however, was called as a witness for the plaintiff and he did not remember having made any such statement to Mr. Flesher, but did testify that he had gained an impression, from a conversation he had

with Craft, that "there was something wrong or something that they were not fully agreed upon as to the deal" and that if it had not come to him "that there was some disagreement between the parties, we would have executed it [the release]".

The defendant J. A. Craft obtained from the tenant on his farm a cancelation of the lease, and about April 10, 1933, the plaintiff moved upon the farm. There is no evidence that the defendants Craft knew of his action or empowered him otherwise than by such authorization as the contract contained, to take possession of the property.

After the expiration of 30 days following the date of the contract and before the Torrens certificate of title was delivered to the escrow holder, the defendant J. A. Craft demanded of the escrow holder the return to him of the deed to the farm property and the bill of sale of the personal property, claiming that the plaintiff had not carried out the provisions of the contract by him to be performed. The escrow holder, however, refused to deliver those documents to Mr. Craft.

The plaintiff testified that he was procuring the property which was to be conveyed to the defendants from Mr. Vick; that he did not know whether the title to it was good or not; that he thought Mr. Vick owned the property which he, plaintiff, was to convey to Mr. Craft, when he made the exchange agreement, and did not know what connection Mr. Vick had with Orchard Development and Land Co.; and that he did not know whether the deed which was tendered by that company was from the owner of the land or not. The record, aside from the abstract of the city property, is entirely silent as to taxes and other encumbrances against the property which plaintiff agreed to have conveyed to

defendant J. A. Craft free of all encumbrances except a $400 mortgage. Furthermore, there is no evidence that the interest on that $400 mortgage to the date of the contract has been paid by plaintiff as agreed.

The defendants offered no evidence, but moved for a dismissal of the suit, which motion was denied by the court. Thereupon the court entered a decree requiring the defendants Craft to perform specifically the terms of the contract, by conveying to the plaintiff within 10 days from the date of the decree the farm land near Scio, Oregon, describing it by metes and bounds, and upon failure to make such conveyance the decree should stand in lieu thereof. The decree also ordered the clerk to deliver to the plaintiff the deed from the defendants Craft which had been introduced in evidence and to deliver to the defendants Craft the deed from the plaintiff for the city property, and the Torrens certificate of title to such property. The decree further ordered the plaintiff, without specifying the time for compliance, to deliver to the clerk of the court for the defendants Craft an abstract covering the city property.

Both the plaintiff and the defendant Rhoten were awarded their costs and disbursements against the defendants Craft.

The appellants appear willing that we consider the abstract of title accompanying the record from the circuit court, provided they are not to be excluded from raising objections to the title to the real property covered by the abstract which they were not in a position to raise in the circuit court for the reason that said abstract was not there presented until after the conclusion of the trial. The respondent seems to believe that this abstract of title is before us for consideration, but objects to the appellants' raising here for the first time

certain defects in the title to the property and the encumbrances on it appearing in the abstract, which were not brought out in the evidence at the trial. It would seem only reasonable that if this abstract is to be considered at all by this court the appellants should not be precluded from urging here, upon their first opportunity for so doing, these objections. On the other hand, this is a court of review in matters of this nature and it is not fair to the trial judge to present evidence to this tribunal which he may not have had an opportunity to examine. In any event, the attorneys for the appellants were denied in the circuit court the right to inspect this abstract and to note the defects here pointed out by them.

Whether or not we should, under the circumstances, consider this abstract, it might not be amiss to direct attention to certain things which therein appear. It is shown that the taxes on the city property for the years 1929 to 1933 are delinquent and unpaid; and that in August, 1924, this property was assessed for the improvement of Highland avenue in the amount of $94.61, upon which only the interest for one year and one instalment of the principal have been paid. In connection with this assessment the abstract shows that a certificate of delinquency was issued to the city of Salem on March 14, 1930. There is also noted an assessment for improvement of sidewalk, for $28.98, dated September 21, 1926, standing against the property without any payment thereon having been made. The abstract further discloses title to the real property in the name of Orchard Development and Land Co., a corporation, and a contract whereby Charles H. Vick, grantor of Orchard Development and Land Co., agrees, prior to his deed to that corporation, to sell to Charles

E. Straw and the latter's wife this property for the sum of $2,500. In addition, it brings to light a document wherein Charles E. Straw and his wife certify that "they have received full and complete satisfaction of a certain contract executed by Charles H. Vick" to them, and that they "do hereby acknowledge satisfaction of said mortgage in full and also payment in full of the note secured thereby".

It is the respondent Flesher's contention that the appellant J. A. Craft advised the agent for the insurance company not to issue any document releasing him and his wife from personal liability on the real property and chattel mortgages, and that in so doing Craft rendered unnecessary performance by Flesher of his part of the contract. The evidence in support of this contention is indeed meager. It is true that Flesher himself testified that Green, the agent of the insurance company, had told him by telephone that Craft had requested him to withhold issuing the release. When Mr. Green was called as a witness on behalf of the plaintiff he did not remember anything definite in connection with what was said to him by Mr. Craft. His impression, however, was that some difference existed between Craft and Flesher regarding the exchange.

There is no evidence whatever in the record that Mr. Craft notified Flesher or any one else that he would not perform his part of the contract. After 30 days from the date when the contract was executed, Mr. Craft did demand of the escrow holder the return to him of the deed to his real property and the bill of sale of certain personal property. That was before Flesher had delivered to the escrow holder the deed from "Orchard Development Land Company" or the certificate of title; and no abstract was ever delivered or any

mention made of delivering one, except as ordered in the final decree.

The excuse given by Flesher for not delivering the abstract and deed was that Mr. Vick was supposed to attend to that. Yet the evidence does not show that Mr. Craft knew of any such arrangement between Flesher and Vick or that he would have agreed to it, had he known. The failure of Flesher to deliver the abstract so that the same could be examined by Craft within 30 days of the execution of the contract was not excused by anything which Craft might have done relating to obtaining a release of Mrs. Craft and himself from liability. The obtaining of such release was a matter which might have been waived by Craft and which did not interfere with performance of the remaining terms of the contract by Flesher, as there is nothing to indicate that Craft would not have proceeded to carry out his part of the contract, had Flesher done everything required of him except to procure the release. Mr. Craft was entitled to an abstract to ascertain the condition of title to the property which he was to receive, before proceeding with the exchange. The fact that he did not demand the return of the documents which he had deposited with the escrow holder until after the expiration of the period within which Flesher was to furnish the abstract is indicative of the fact that up to that time he had not repudiated the contract.

But even if we were to assume that Craft did notify the insurance company, as contended by Flesher, and that such act on his part absolved Flesher from carrying out or offering to carry out the other provisions of the contract incumbent upon him to perform, nevertheless it was obligatory on the part of Flesher to plead and prove that he was ready, able and willing to per-

form each and every term of the contract on his part to be performed, with the exception of obtaining the release. This he failed to do.

The purported deed for the land which he was to cause to be transferred to Craft was defective in many respects, as already pointed out, and the grantee therein was Minnie D. Craft, not J. A. Craft, although the evidence fails to show any authorization by Mr. Craft for the insertion of the name of his wife as grantee in the deed.

The original registrar's certificate, under the Torrens system, or a certified copy thereof, is by law made evidence of certain facts: § 63-338, Oregon Code 1930. However, the certificate which was offered and admitted in evidence here was not the original or a certified copy thereof, but the owner's duplicate certificate, which is not by statute made evidence of title to property.

In referring to the Torrens system as adopted in this state, the late Mr. Chief Justice McBride in *Christenson v. Christenson,* 109 Or. 396 (219 P. 615), observed:

"We find nothing in our statute which makes the owner's duplicate certificate constructive notice, or any notice, of any fact connected with the title, and we do not regard this statute so beneficial in character as to entitle us very liberally to construe into it provisions not contained in the statute itself. '* * * The duplicate certificate may have been an exact copy of the register when it was executed, but involuntary liens may have been placed on the register subsequently, and may not have been noted on the duplicate certificate. A purchaser must examine the register, and may not rely on a duplicate certificate. * * *' Niblack on the Torrens System, § 63."

■ Even the original certificate of title on file with the registrar does not purport to contain city liens or delinquent taxes, and nothing is presumed to be contained in the owner's duplicate certificate which is not in the original.

The respondent Flesher showed a complete lack of knowledge of the title to the property which he was to cause to be conveyed to Craft, and without knowledge of the title to that property or the liens against it, any general testimony he might have given as to being ready, able and willing to carry out his part of the contract is valueless. There was, moreover, no evidence, other than the owner's duplicate certificate of title, as to the ownership of the city property which was to be conveyed to Mr. Craft, and no showing that the then owner of said property, which, according to the evidence, did not stand in the name of Flesher, would convey the property to Mr. Craft.

■ The circuit court in its decree required both Mr. and Mrs. Craft to carry out the terms of a contract to which Mrs. Craft was not even a party. It demanded that Mr. Craft accept as full performance on the part of Flesher a defectively executed deed, not to Craft but to his wife, without any evidence whatever that the taxes on the property had been paid or that it was free from city liens, or that Flesher would be required to pay them, if any there were, and without any proof that Flesher had paid the interest on the $400 mortgage to the date of the contract or any requirement that he pay such interest, if it had not already been paid. Moreover, the decree required that Flesher furnish an abstract, but that was not to be done until after the entry of the decree.

It must be remembered that the title to the property which was to be conveyed to Craft was registered under

the Torrens system, and in order to have the transfer noted on the certificate of title it was necessary for Craft to have a properly executed deed from the grantor of such realty. The registrar would not be justified in accepting the proffered deed as a valid transfer and noting the same on the certificate of title, inasmuch as it was defectively executed, in that the true name of the grantor was not recited in the main part of the deed, nor was the name of any grantor contained in the attestation clause or subscribed to the instrument. The acknowledgment, also, was deficient, as hereinbefore indicated. In addition to all the foregoing, there appears an attempt to extinguish the rights of purchasers under an earlier contract of sale with Mr. Vick, by procuring from such purchasers a document in the nature of a satisfaction of mortgage.

In view of the record in this case, the circuit court was not warranted in decreeing specific performance in favor of the plaintiff, and the motion of the defendants Craft to dismiss the suit should have been granted. The decree appealed from is therefore reversed and the cause remanded with instruction to dismiss the suit; neither party to recover costs.

BEAN, BELT and CAMPBELL, JJ., concur.