Argued April 6, affirmed May 10, 1977

GAFFI et ux, *Appellants,*
*v.*
BURNS et al, *Respondents.*
(No. 21213, TC 24543)

563 P2d 726

Martin W. Van Zeipel, Portland, argued the cause and filed the brief for appellants.

George VanNatta, of VanNatta & Peterson, St. Helens, argued the cause and filed the brief for respondents.

Before Denecke, Chief Justice, and Tongue, Bryson and Davis, Justices.

TONGUE, J.

**TONGUE, J.**

This is a suit for specific performance of an earnest money agreement for the sale of land brought by the purchasers against the sellers. Plaintiffs appeal from a decree denying specific performance, based upon findings of fact to the effect that (1) the evidence was insufficient to prove that one of the two husbands who signed the earnest money agreement as sellers (Mr. Burns) had authority to sign it for his wife (Mrs. Burns); (2) "it was up to" plaintiffs to "accept or reject the marketability of defendants' title"; and (3) plaintiffs' tender of the earnest money, mortgage and note was made too late (the day of trial) and was "inadequate by the sum of $2,500."

In 1970 or 1971 Mr. and Mrs. Burns and Mr. and Mrs. Mollenhour purchased the so-called Kammeyer Farm property in Columbia County, taking title in all four names. Prior to the transaction with plaintiffs, the defendants had sold five other parcels of that tract. In each of such sales, the earnest money agreement had been signed by Mr. Brown and Mr. Mollenhour and not by their wives, but the deed for each of these sales was apparently signed by all four.

Mr. Mollenhour testified that when he signed the prior earnest money agreements "without Mrs. Burns or Mrs. Mollenhour signing" he signed "for them" and "had their permission" and "that applie[d] also to the Gaffi transaction." Mrs. Mollenhour also testified that her husband "always told her about the sales of the other parcels" and also "about the sale to Gaffis" and that she "let her husband do the earnest money agreements." In addition, she testified that she and her husband talked with Mr. and Mrs. Burns about the Gaffi transaction and that Mrs. Burns gave her approval "as far as I can remember."

Mr. and Mrs. Burns did not testify at the trial, but Mrs. Burns testified by deposition (offered at the trial) that her husband "does all the business work"; that

she discussed with her husband "his purchases and sales of property"; signed deeds and knew that this property was going to be sold in parcels. She also testified as follows:

"Q   Were you willing to sell this property or at least have your interest in the property in June of 1973?
"A   I guess.
"Q   Did you object or not want your husband to sign any agreement with the broker to sell the property?
"* * * * *
"THE WITNESS: I don't think so."

and that

"Q   Did you disagree with this particular sale of this particular piece of property to Mr. and Mrs. Gaffi?
"A   Not that I recall."

On June 10, 1973, a standard form "official earnest money contract" for the sale of five acres of the Kammeyer Farm was signed by plaintiffs, as purchasers, and on June 12 was signed by Mr. Mollenhour and Mr. Brown, as sellers. The purchase price was stated to be $15,000, with $500 paid as earnest money, $2,500 to be paid "upon acceptance of title and delivery of deed or contract," and the balance payable by note and mortgage on specified terms. The sale was stated as being "contingent on getting the Columbia County Sanitarian's approval for septic sewage system by July 1, 1973—or as soon thereafter as is possible for Sanitarian's schedule." Such a Building and Sanitation Permit was issued on July 31, 1973.

On August 30, 1973, defendants' attorney wrote to plaintiffs, enclosing a proposed note and mortgage for execution by them "[i]n the event you should wish to proceed with your purchase" and stating that in such an event plaintiffs should execute the note and mortgage and deliver it to the title company (as escrow agent for closing the transaction) "together with your check for $2,500." That letter also stated, however, that "if you accept this transaction you cannot consider that Mollenhour and Burns had bound them-

[ 330 ]

selves to make any further improvements on the property or road." Apparently defendants had encountered "problems with the zoners and planners over a road that related to this property" and which "did not meet planning approval." Plaintiffs, however, did not deliver the note, mortgage or $2,500 check to the title company in response to that letter.

Mr. Mollenhour testified that "we spent the next several months trying to pinpoint what had to be done" and that "in the fall sometime" the "improvements got expensive to the point we couldn't do it." By letter dated January 25, 1974, plaintiffs were notified by the realtor that defendants were unable to furnish marketable title "or complete the transaction" because title insurance would not be provided that would guarantee ingress and egress to the property. The $500 earnest money payment was then returned, "since the transaction cannot be completed as per agreement dated June 10th 1973."

Five months later, on June 18, 1974, plaintiffs' attorney wrote to defendants stating that while inability to furnish ingress and egress might give a purchaser the right to refuse to accept the property, such a requirement being "for his benefit," that problem "would not furnish you with any justification for failure to go through with your contract." The letter also stated that plaintiffs regarded the return of the $500 earnest money as improper; that this money was "being held for your benefit" and that plaintiffs demanded that defendants "proceed to carry out your obligations under that contract" and "sell the land" on "the terms set out in that Earnest Money Agreement." Plaintiffs did not at that time, however, tender the note and mortgage or the further payment of $2,500.

At some unspecified date in July the access road in question was finally approved by the planning commission. On July 31, 1974, plaintiffs filed a complaint for specific performance alleging, among other things, that defendants agreed to sell the property by the

earnest money agreement, a copy of which was attached; that in entering into that agreement Mr. Burns and Mr. Mollenhour were "also designated as agents in writing and by implication" (for their wives); that "[o]n or before February 13, 1974 defendants completely repudiated said contract"; that plaintiffs held the earnest money "as trustee for defendants and hereby tender said earnest money to defendants" and that "plaintiffs stand ready to perform all their obligations under said contract, upon performance by defendants of the conditions precedent to such performance by plaintiffs."

At the time of trial plaintiffs tendered into court the note and mortgage and a cashier's check for the $500 earnest money payment, but did not tender the further payment of $2,500. Plaintiffs also failed to testify or to offer evidence to prove the allegation of their complaint to the effect that they were then not only "willing," but "ready and able" to perform all of their obligations under the contract. Indeed, there was no evidence that plaintiffs then had or could raise $2,500.

The only evidence remotely in point on this issue was testimony that after receiving the letter of January 25, 1974, from the realtor plaintiffs told him and defendants that they "wanted to proceed with the transaction" and testimony that plaintiffs had previously obtained approval for a septic sewer system and that they had "planned" to build a four-bedroom house on this tract beginning in September 1973 and had "budgeted" $30,000 to construct the house.

It may be that the evidence offered by plaintiffs was sufficient to prove, as a matter of implied agency, that defendant husbands acted as the agents of defendant wives in signing the earnest money agreement for the sale of this property.[1] It would also

---

[1] *See Young v. Neill et al,* 190 Or 161, 174, 220 P2d 89, 225 P2d 66 (1950); and *Culver v. Rendahl et ux,* 211 Or 682, 688, 318 P2d 275 (1957).

appear that upon repudiation of that agreement by defendants, any tender of performance by plaintiffs would have been a vain and useless act, with the result that no such tender was required.[2]

Defendants contend, however, that plaintiffs cannot recover because they were still required to prove that they were "ready, able and willing" to perform their obligations under the agreement, including the payment of $2,500 on closing of the transaction, and that plaintiffs failed to offer any substantial evidence to prove those necessary facts.

In *Percy v. Miller et al,* 197 Or 230, 239-40, 251 P2d 463 (1952), we held that:

> "It is a general rule of equitable jurisprudence that a plaintiff coming into equity for specific performance must show not only that he has a valid, legally enforceable contract, but also that he has complied with its terms by performing or offering to perform on his part the acts which formed the consideration of the undertaking on the part of the defendant, *or that he is ready, able, and willing to perform his obligations under the contract, in their entirety,* * * *."[3] (Emphasis added)

In other words, a plaintiff in such a case who has not performed or offered to perform must at least show that he is "ready, able, and willing to perform."

Upon application of that rule to the facts of this case, we conclude that although the repudiation by the seller of a contract for the sale of land may excuse the tender of payment by the purchaser, such a repudiation does not excuse a purchaser who seeks the specific performance of such a contract from pleading and proving that he is ready, able and willing to perform his obligations under the contract. Plaintiffs' com-

---

[2] *Wittick v. Miles,* 268 Or 451, 454, 521 P2d 349 (1974). *Cf. Guillory Corp. v. Dussin Investment,* 272 Or 267, 275, 536 P2d 501 (1975).

[3] To the same effect, *see Winters v. Shelton et ux,* 225 Or 104, 109, 357 P2d 284 (1960); *Flesher v. Craft,* 148 Or 633, 644-45, 38 P2d 59 (1934); and 5 Pomeroy's Equity Jurisprudence 4972, § 2227 (2d ed 1919). *Cf. Huszar v. Certified Realty Co.,* 266 Or 614, 620-21, 512 P2d 982 (1973).

plaint in this case alleged sufficient facts to satisfy this requirement, but plaintiffs failed to offer evidence sufficient to prove that necessary allegation of their complaint.

This result may appear to be harsh to the plaintiffs, who suggest the entry of a decree for specific performance conditioned upon payment of the contract price within a specified time, citing *Wittick v. Miles,* 268 Or 451, 521 P2d 349 (1974), and *Mathers v. Eddy,* 267 Or 191, 515 P2d 912 (1973).

Those cases involved quite different facts, however, and in neither case was there any question but that the purchaser was ready, able and willing to perform the contract. In our opinion, the result in this case is no more harsh than the result in many cases in which, under established rules of law, a plaintiff must not only allege, but prove, each of several essential facts in order to establish a cause of action or right of recovery and fails to offer evidence on one of such essential facts.

It follows that the decree of the trial court dismissing plaintiffs' complaint must be affirmed, although for somewhat different reasons than those set forth in its findings of fact.

Affirmed, with costs to neither party.