## FULWILER et ux, *Respondents,*
### *v.*
## BEDDOE, *Appellant.*
## (No. 77 8-205, CA 10534)

589 P2d 1197

Jerome E. LaBarre, Portland, argued the cause and filed briefs for appellant.

Richard O. Thomas, of Gaylord & Thomas, Portland, argued the cause and filed a brief for respondents.

Before Schwab, Chief Judge, Gillette and Roberts, Judges, and Holman, Judge Pro Tempore.

HOLMAN, J., Pro Tempore.

**HOLMAN, J., Pro Tempore.**

This is a suit for specific performance of an earnest money agreement for the sale of a residence brought by the purchasers against the seller. Defendant appeals from a decree requiring performance.

Plaintiffs and defendant entered into an earnest money agreement on July 7, 1977, without the aid of either a real estate agent or an attorney for the sale to plaintiffs of defendant's residential property for the sum of $116,000. Upon the signing of the agreement $5,000 earnest money was paid and upon the closing date of September 1, 1977, the balance was to be paid as follows:

"upon acceptance of title and delivery of deed or delivery of contract ...................... $18,200.00;

"balance of Ninety-Two Thousand eight hundred Dollars .......................................... $92,800.00;

"payable as follows:

"Purchaser will immediately apply for and obtain a minimum 80% (eighty percent) Loan in the amount of the balance."

At the time of the signing of the earnest money agreement plaintiff James D. Fulwiler was going through a bankruptcy proceeding and a claim had been made against him for $183,000 under circumstances which would prevent the debt from being discharged in bankruptcy if the claimant was successful. This claim had been tried but was undecided at the time of the earnest money agreement and plaintiffs did not disclose this contingent liability which would have prevented plaintiffs from being able to perform the contract. The issue was subsequently decided in Fulwiler's favor in August of 1977. In addition, plaintiffs did not disclose Mr. Fulwiler's bankruptcy proceeding.

Subsequent to the signing of the earnest money agreement defendant learned of Fulwiler's bankruptcy proceeding and the pending claim which was not dischargeable in bankruptcy. She also learned she

had undervalued her property by at least $25,000 in setting the sale price. Thereafter, on July 23, she orally told plaintiffs that she was not going to complete the transaction unless the purchase price was adjusted. Her repudiation of the contract was subsequently confirmed by a letter dated July 25. The trial judge found, and we agree, that her real reason for attempting to terminate the agreement was her undervaluation in setting the price at which she was willing to sell her property.

Plaintiffs contacted Benjamin Franklin Savings and Loan Association shortly after the signing of the earnest money agreement and Benjamin Franklin sent an appraiser to examine defendant's residence. Thereafter, on July 26, plaintiffs made formal application for a loan of $75,000 which was approved by Benjamin Franklin by letter dated August 3. The amount of the loan was approximately 65 per cent of the purchase price rather than the 80 per cent provided in the earnest money agreement. The loan was also made subject to plaintiffs' cashing out their equity in their present residence for application upon the balance of the purchase price. Plaintiffs advertised their home for sale and testified that after defendant told them she was not going to complete the transaction they took the property off the market upon the advice of their attorney. Subsequently plaintiffs put their home back on the market and early in September entered into an agreement for its sale, which agreement was subject to their winning the present case and being able to purchase defendant's property.

■ Defendant first contends that plaintiffs are not entitled to performance because they did not perform their obligations under the contract to "immediately" apply for and be granted a loan in a sum which was a "minimum 80%" of the purchase price. It is our conclusion that plaintiffs did prosecute the loan with dispatch. Defendant admitted that the appraiser from Benjamin Franklin came to her home shortly after the agreement was signed. The fact that the formal

application for the loan was not signed until after the appraisal is not a breach of the agreement to take prompt action and did not delay approval of the loan.

■■ It is also our conclusion, as it was of the trial judge, that the provision for the amount of the loan was not a provision the non-compliance with which would justify defendant's repudiation of the agreement. Defendant attempted to make it such a provision by her testimony that she was getting married in August and that she put the provision for the 80 per cent loan in the agreement because she did not want to wait until the closing date and then find that plaintiffs had insufficient funds to complete the transaction. She said she did not want to take her house off the market and then find plaintiffs could not complete the deal.

To the contrary, she also gave testimony in a deposition, which is in evidence, which is capable of the construction that the reason for the 80 per cent figure was to make it sufficiently large to permit plaintiffs to borrow up to that amount if they needed it but that they were not required to do so if it was not needed.[1] Defendant also indicated she was primarily interested in receiving the purchase price on the closing date and admitted that plaintiffs had informed her at the time of the earnest money agreement that they might secure a loan in a lesser amount because they might not need one as large as 80 per cent of the purchase price. There was no evidence she remonstrated when this was said. Plaintiffs' failure to secure a loan in the amount of 80 per cent was insufficient, in our opinion, to justify defendant's repudiation of the contract.

■ Defendant also contends that plaintiffs' failure to disclose to her their insecure financial standing arising out of Mr. Fulwiler's bankruptcy and the pendency

---

[1]Defendant claims this evidence was not admissible because it was contradictory of the written agreement and therefore in violation of the parol evidence rule. Such testimony does not violate the rule because it is not necessarily contradictory of the contract and it is explanatory of the reason the provision was included in it.

against him of the claim that was not dischargeable in bankruptcy justified her repudiation of the contract. Defendant made no inquiry concerning plaintiffs' financial situation and there is no evidence that any statements they made to her concerning their financial situation were untrue.[2] Again, we do not believe this failure justifies repudiation of the agreement or that it was the real reason for defendant's attempted repudiation. Plaintiffs were either going to "come up" with the money on September 1, the day for performance, or they were not.

■ The real question in this case is whether plaintiffs have proved that as of September 1 they were financially able to complete the transaction. Despite defendant's repudiation of the contract plaintiffs must prove that they were able to perform the transaction upon the closing date before they are entitled to the remedy of specific performance, although by her repudiation they are relieved from making a tender of the purchase price. *Gaffi v. Burns,* 278 Or 327, 333, 563 P2d 726 (1977).

■ Plaintiffs claim they had a commitment from a bank manager to advance whatever funds they needed to complete the transaction but they admitted that this was contingent upon receiving consent of some of the bank directors, and there is no evidence that this consent was ever secured. They also claimed they had a receivable of $10,000 but there is no evidence of its liquidity as of September 1, 1977. They had $4,000 in a bank account. To the bank account must be added the $75,000 loan from Benjamin Franklin and their equity in their present home if these amounts can be considered as being available on the required date.

---

[2]Defendant contends plaintiffs' statements that they might need a loan of only $65,000 misrepresented their financial situation because they did not presently have enough money in liquid funds to complete the transaction if they secured that small a loan. We do not consider it a misrepresentation because, as subsequently indicated, they had assets which, if converted to cash, were adequate for the purpose.

[ 284 ]

Plaintiffs testified that their agreement for the sale of their present home, which was entered into about September 15, 1977, was for $88,500 and they owed $30,000 upon it. The amount needed in addition to the loan from Benjamin Franklin, when the costs of the loan were added, was approximately $39,000. Obviously, there were adequate funds if their equity in their present home can be taken into consideration. These funds were not only needed to make up the total purchase price but the loan from Benjamin Franklin was contingent upon their availability.

Defendant claims the equity in plaintiffs' home cannot be taken into consideration because no sale had been completed by September 1, the closing date for the present transaction. This contention presents a problem because we have no way of knowing whether plaintiffs would have made a sale of their home by September 1 which would have liquidated sufficient of their equity to make up the balance of the purchase price of defendant's property. We have no reason to doubt the testimony of plaintiffs that after defendant repudiated the agreement on July 23 and 25, their attorney advised them to take their property off the market and they did so for a time. This would have been the logical thing to do under the circumstances.

It is our conclusion that defendant is in no position to complain that the equity was unavailable to plaintiffs on September 1 because her wrongful repudiation was the cause of their taking their property off the market. Plaintiffs have demonstrated that they had adequate assets, if liquidated, to complete the transaction, and defendant is in no position to complain about the lack of liquidity because she was responsible for their lack of a full opportunity to liquidate their principal asset.

The decree of the trial judge is affirmed.