Argued and submitted December 12, 2006, affirmed May 16, 2007

Stanley L. BEATY,
*Plaintiff-Appellant,*

*v.*

Michael OPPEDYK,
*Defendant-Respondent.*

Malheur County Circuit Court
04093940L; A129191

159 P3d 1157

M. Elizabeth Duncan argued the cause for appellant. With her on the briefs was Greene & Markley, P.C.

Tim J. Helfrich argued the cause for respondent. On the brief were David R. Auxier and Yturri Rose, LLP.

Before Edmonds, Presiding Judge, and Haselton and Wollheim,* Judges.

EDMONDS, P. J.

---

* Wollheim, J., *vice* Richardson, S. J.

## EDMONDS, P. J.

Plaintiff appeals a judgment dismissing his complaint for specific performance of a land sale contract between himself and defendant, the seller. The trial court granted defendant's motion for a directed verdict, ruling that plaintiff failed to prove that he was ready, willing, and able to perform the contract. Alternatively, the trial court ruled that the contract was too indefinite to be enforceable because it did not specify a closing date. We affirm.

Defendant owns and operates a large dairy of approximately 300 cows in the Adrian area. The dairy sits on a parcel of land of about 157 acres, and includes a milk barn, corrals, feed storage, and other dairy equipment. The 157-acre parcel also includes a residence, a mobile home, irrigated pasture and cropland, and 80 acres of dry pasture. Three sprinkler wheel lines and several hand lines are used to irrigate the portion of the property with water rights. Defendant owns the dairy property free and clear of any mortgages or other encumbrances, and he owns an additional 360 acres of land on nearby parcels, on which he raises most of his feed.

In early August 2004, plaintiff visited defendant's dairy to discuss selling some heifers to defendant. During the visit, defendant expressed an interest in selling the dairy. A few days later, plaintiff was again at the dairy, and defendant expressed a willingness to sell the dairy for $1,000,000. The price did not include any cows and did not include any feed on the dairy premises, although the sale of those items was discussed.

On August 8, 2004, plaintiff came to the dairy and presented to defendant a proposed written agreement for the sale of the property that he had drafted himself. The agreement was entitled, "AGREEMENT TO SELL REAL ESTATE," and established the sale price at $1,000,000. The agreement also provided for the sale of all milking equipment and the milk tank. There were several blank provisions in the agreement, including the dairy's address, the amount of acreage, and the number of wheel lines. Defendant supplied the information needed to fill in the blanks. Although defendant

indicated in the agreement that the amount of acreage was 153 acres, both parties understood that the sale was for a parcel actually containing 156.80 acres. The parties did not intend the agreement to include the sale of the mobile home or the hand sprinkler lines. Also, no agreement was reached regarding the sale of defendant's cows or the feed. Both parties signed the typed agreement. Below his signature, defendant wrote the words, "Invalid 60 days." Both parties understood those words to mean that plaintiff had 60 days to arrange financing for the purchase. The document did not mention a closing date for the sale.

Thereafter, plaintiff began pursuing financing options, and defendant talked with his accountant. Defendant became concerned about the tax implications of the proposed sale and called plaintiff on September 4, 2004. He told plaintiff at that time that he no longer wanted to sell the property. There were further discussions between the parties that later involved attorneys for both parties, but no subsequent agreement was reached, and the sale was not completed. Plaintiff then sued defendant for specific performance of the agreement.

Plaintiff's complaint alleges that defendant anticipatorily breached the agreement and that plaintiff remained

"ready, willing and able to fully perform the agreement on his part as it was made and as agreed to be performed. Plaintiff has fully performed all that he could do and do[es] now tender all performances and payments due from Plaintiff pursuant to the agreement and now stand[s] ready, willing and able to complete the agreement as made and request[s] that the court enter judgment for specific performance of the agreement by Defendant."

The complaint requested that defendant be required to specifically perform the agreement and that defendant convey the property to plaintiff "in accordance with the terms set forth [in the agreement]."

At trial, plaintiff testified that, after the agreement was signed, he began to pursue financing options, including submitting financial statements to various banks and arranging for an appraiser to come up from a California bank to appraise the property. After defendant told plaintiff that

he no longer wanted to sell the property, plaintiff told the appraiser not to come, and plaintiff did not further undertake to obtain financing for the purchase. However, Kevin Ullrich, a private financier, testified at trial on behalf of plaintiff. He stated that he was willing and able to finance the purchase of the dairy if specific performance was ordered. Ullrich admitted, however, that he had not seen a title report or appraisal of the property, and had only driven past the property for the first time on the day of trial. He also testified that he had not seen any financial statements regarding plaintiff's finances and had not worked out any of the financial arrangements with plaintiff regarding the purchase, such as interest rates and security for the financing. During his testimony, Ullrich was asked:

"[DEFENDANT'S ATTORNEY]: So is it fair to say that you're not ready to commit a million dollars ($1,000,000) today until you get these other issues worked out with [plaintiff]?

"[ULLRICH]: Well, I would be a fool not to, right?

"* * * * *

"[DEFENDANT'S ATTORNEY]: * * * [T]hat's why I'm asking you, because this is a lot of money.

"[ULLRICH]: Wouldn't anybody. I mean I don't understand your question. I mean, uh, I mean I—nobody's going to go into something like that without, you know, having the place appraised and checked out things for yourself. And again, I never got that far.

"[DEFENDANT'S ATTORNEY]: Okay. And you'd want to know what rate of return you're going to make on a million dollars ($1,000,000) because otherwise you could go put it in the stock market or buy another dairy yourself or go down to Vegas or whatever you wanted to do with it, right?

"[ULLRICH]: Yeah, yeah.

"[DEFENDANT'S ATTORNEY]: And your expectation would be that you would enter into some sort of agreement with [plaintiff] himself before you committed the funds.

"[ULLRICH]: Yes."

At the close of plaintiff's case, defendant moved for a directed verdict, which we treat as a motion under ORCP 54 B(2), on the basis that plaintiff failed to establish that he was ready, willing, and able to perform the contract as of the date of trial. The trial court reserved ruling on the motion until the end of trial. Following additional submissions by the parties, the trial court issued a written opinion granting defendant's motion. The trial court ruled:

"Plaintiff failed to prove that he was ready willing and able to proceed with the purchase of the dairy property at the time of the trial and the Defendant's Motion for Directed Verdict should be and is granted. In addition, even if he had the funds available to proceed with the purchase of the property, Plaintiff has failed to prove his right to the remedy of specific performance by clear and convincing evidence and his cause of action is denied and dismissed.

"* * * * *

"In order to prevail at trial for specific performance, the plaintiff must prove that he is ready willing and able to perform the contract that he seeks to enforce. *Aurora Aviation v. AAR Western Skyways*, 75 Or App 598[, 707 P2d 631] (1985)[.] In this case the alleged contract called for a cash purchase price for [defendant]'s dairy property of $1,000,000, with financing to be arranged within 60 days. [Plaintiff]'s failure to arrange financing within the 60 days was excused because of [defendant]'s repudiation of the agreement before the 60 days had expired. [Plaintiff] acknowledged that he did not have the money at the time of trial but contended that Ullrich was willing to finance his purchase. The testimony of Ullrich could be best described as that he was willing to finance the purchase if a number of additional steps were completed. * * * The Plaintiff in this case was required to show that he was either able to pay the $1,000,000 at the time of trial or that the money was available to him to pay the purchase price. *Voin v. Szabo*, 139 Or App 590[, 913 P2d 717] (1996). In this case [plaintiff] did not have the money and had not arranged for financing. The evidence was that Mr. Ullrich *might* be willing to finance the purchase dependant on several contingencies. The motion for directed verdict is granted.

"Even if the motion for directed verdict were not granted, the court would be compelled to grant a verdict in

favor of the Defendant based on all of the evidence presented. As stated above, the Plaintiff did not prove that he was ready willing and able to perform under the terms of the agreement."

(Emphasis in original.)

The trial court thereafter entered a general judgment dismissing plaintiff's case with prejudice, leading to this appeal.

In his first assignment of error, plaintiff argues that the trial court erred by granting defendant's motion for a directed verdict on the basis that plaintiff failed to show that he was ready, willing, and able to perform the contract as of the date of trial. According to plaintiff, it was defendant's repudiation that "was the direct cause of [plaintiff's] failure to proceed with his due diligence and obtain the cash necessary to purchase the defendant's dairy." Plaintiff concludes that we should enforce the agreement to sell and order that plaintiff "be allowed a new 60-day period within which to obtain the $1,000,000 in cash and close this transaction." In his reply brief, plaintiff argues that if a new 60-day period is not granted, he should be given the 33 days that remain of the original 60-day period.

We review the grant of defendant's motion for a directed verdict for errors of law, accepting all facts and inferences in the light most favorable to the nonmoving party. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773 (2006). Generally, a claim for specific performance must be proved by clear and convincing evidence. *Murray v. Laugsand*, 179 Or App 291, 39 P3d 241 (2002). To be entitled to specific performance, a plaintiff must show that he has a valid, legally enforceable contract and that he is ready, willing, and able to perform his obligations under the contract. *Gaffi v. Burns*, 278 Or 327, 333, 563 P2d 726 (1977); *see also Percy v. Miller, et al.*, 197 Or 230, 239-40, 251 P2d 463, 468 (1952).

For purposes of this assignment of error, we assume, without deciding, that plaintiff proved that there was a valid, legally enforceable contract between the parties that was repudiated by defendant. Defendant's repudiation excused

plaintiff from having to tender performance at trial, but plaintiff was still required to show at trial that he was *able* to perform. *Aurora Aviation*, 75 Or App at 604; *see also Wilson v. Matthews*, 48 Or App 491, 495, 617 P2d 302 (1980), *aff'd*, 291 Or 33, 628 P2d 393 (1981). "To establish that a party is ready, willing and able to perform, more is required than speculation that, but for a defendant's repudiation, a contract *might have been* performed." *Voin*, 139 Or App at 594. (Emphasis in original.) At trial, plaintiff testified that he did not have $1,000,000 to pay the purchase price, but that he hoped to obtain that amount from a lender. The only evidence submitted by plaintiff to prove that he was able to pay the purchase price was the testimony of Ullrich. Ullrich's testimony, however, was that he had not made a final commitment to finance the purchase but, instead, conditioned any loan commitment on the completion of additional requirements by plaintiff. It follows that the question before us is whether the above evidence is legally sufficient to order specific performance.

To analyze that issue, we begin with the general rule that, although an adverse party's repudiation excuses a party from having to tender actual performance, the party is still required to show at trial an ability to perform its obligations under the agreement. What constitutes a sufficient demonstration of that requirement is informed by the facts in the above cases. In *Gaffi*, the plaintiff buyers brought an action against the defendant sellers for specific performance of an earnest money agreement for the sale of land. At the time of trial, the plaintiffs tendered into court the note, mortgage, and a cashier's check for the $500 earnest money payment. However, they did not tender an additionally required escrow payment of $2,500. The Supreme Court held that the defendants' repudiation of the agreement excused the plaintiffs from actually tendering the $2,500. *Id.* Nevertheless, because the plaintiffs also "failed to testify or to offer evidence to prove the allegation of their complaint to the effect that they were then not only 'willing,' but 'ready and able' to perform all of their obligations under the contract," and because there was no evidence that the plaintiffs had or could raise $2,500, the court concluded that the plaintiffs had failed to prove that

they were able to perform under the agreement. 278 Or at 332-34.

In *Aurora Aviation*, the plaintiff contracted to purchase an airplane for $115,000. The plaintiff was able to procure $95,000 of the purchase price but had difficulty coming up with the remaining balance. In the meantime, the defendant sold the plane to a third party, and the plaintiff sued for breach of contract and was awarded damages in the trial court. The defendant appealed, arguing that there was no evidence that the plaintiff had been ready, willing, and able to pay the entire $115,000. In response, the plaintiff argued that there was evidence that, but for the sale to the third party, it would have obtained the remaining $20,000 from an anticipated sale of the plane to another party. We rejected the plaintiff's argument and reversed the judgment for damages, because "the record is devoid of any showing that plaintiff was either *able* to pay the $20,000 balance or that the amount was *available* to be paid to defendant." *Aurora Aviation*, 75 Or App at 605 (emphasis in original).

In *Voin*, the plaintiffs sued for specific performance of a contract to buy the defendants' home. Citing *Aurora Aviation*, we assumed that the defendants had repudiated the contract and that, therefore, the plaintiffs were excused from tendering the purchase price at trial. *Voin*, 139 Or App at 593. We then examined the evidence regarding whether the plaintiffs were able to perform. The plaintiffs' only evidence that they were able to perform was the testimony of their mortgage broker, who testified at trial that plaintiffs "would have qualified for a loan, yes. It would have been very close." *Id*. We noted that there was no evidence that the mortgage broker or anyone else had obtained credit reports on either plaintiff and that there was no evidence that any particular financial institution had made a commitment to provide financing or that plaintiffs, in fact, had the necessary funds available to them. We held,

> "There is only the speculation of the broker that plaintiffs probably would have been able to pay. Particularly in the light of the fact that the financing was, in the words of plaintiffs' own broker, 'very close,' it is difficult for us to

> understand how the mere possibility of obtaining financing from a hypothetical lender satisfies the requirement that plaintiffs actually are able to pay the money owed. We conclude that plaintiffs failed to establish an essential prerequisite to obtaining the extraordinary remedy of specific performance[.]"

*Id.* at 595-96.

According to plaintiff, however, the facts of this case are unlike the above cases and are comparable to the facts in *Fulwiler v. Beddoe,* 38 Or App 279, 589 P2d 1197 (1979), where specific performance was ordered. In that case, the buyers had taken their own property off the market because of the seller's repudiation, and were therefore unable to liquidate that asset in time to tender performance under the contract with the seller. We held that the seller was "in no position to complain that the equity was unavailable to plaintiffs on [the day for performance] because her wrongful repudiation was the cause of their taking their property off the market." *Id.* at 285. However, we also concluded that the plaintiffs had "demonstrated that they had adequate assets, if liquidated, to complete the transaction[.]" *Id.* In contrast to *Gaffi, Aurora Aviation,* and *Voin, Fulwiler* is an example of a case where the plaintiffs demonstrated that they would have been able to perform but for the repudiation of the contract by the seller. The plaintiffs in that case had equity available in an asset that they had contemplated selling in order to perform under the contract with the seller, but the seller's repudiation of the contract had deterred the plaintiffs from liquidating that asset.

■ In light of the above cases, we turn to the evidence presented by plaintiff. Plaintiff asserts that he "was diligently seeking financing for the dairy when [defendant] repudiated the deal only half-way through the 60-day contract period" and that a bank had scheduled an appraisal of the dairy, which plaintiff canceled upon defendant's repudiation. However, plaintiff did not present evidence that he had assets sufficient to pay the purchase price or that he had an asset to sell with value sufficient to supply the monies needed for the purchase price. Nor did plaintiff offer evidence that defendant's repudiation prevented him from completing a

financing agreement with Ullrich. Indeed, plaintiff was unable to prove what he had alleged. His complaint alleges that he had "fully performed all that he could do and do[es] now tender all performances and payments due[.]" But, in fact, all that plaintiff proved was that Ullrich was a potential lender if a financing arrangement could be reached between them.[1]

Additionally, for the first time on appeal, plaintiff argues that he should be granted additional time to complete the transaction, either through a new 60-day period in which to obtain financing, or the 33 days remaining on the original 60-day period. Generally, an issue not preserved in the trial court will not be considered by us on appeal. ORAP 5.45(1); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991). Plaintiff does not point to any allegation or request made to the trial court for an additional 33 or 60 days in which to obtain financing. In his closing argument at trial, plaintiff maintained that he "was ready to go then and he's ready to go now and close a cash transaction. And we believe the agreement should be specifically enforced." Also, in his memorandum in response to defendant's motion for a directed verdict, plaintiff asserted that the testimony of Ullrich that he was ready to go forward with financing the purchase demonstrated that plaintiff was ready, willing, and able to perform. Consequently, it is clear to us that the only issue presented to the trial court was the sufficiency of the evidence regarding plaintiff's ability to perform under the contract. Because plaintiff did not preserve the issue of whether the time should be extended for performance, we do not consider it on appeal. ORAP 5.45(1).

---

[1] Plaintiff also argues that this case is comparable to *Meyer v. Kesterson*, 151 Or App 378, 950 P2d 896 (1997), *rev den*, 327 Or 123 (1998). However, in that case, the plaintiffs prayed in their complaint for conveyance of the property "pursuant to the provisions of the parties' agreement within 90 days of the entry of judgment by the court or within such other reasonable time as the court may provide." *Id.* at 385. The plaintiffs presented testimony that they were preapproved for a home equity loan that covered the full purchase price and that the money would be available in 90 days. We observed that, "[a]lthough plaintiffs did not have the cash at the time of trial, there is no contention that the money was not available to them or that they would not have the money in time to make payment as ordered by the court." *Id.* at 392-93. The facts in *Meyer* are in contrast to the facts in this case where plaintiff's ability to perform is subject to conjecture.

In summary, the trial court ruled correctly when it granted defendant's motion for a directed verdict, because plaintiff failed to demonstrate that he was able to perform under the contract at the time of trial. Given that conclusion, we need not reach plaintiff's second and final assignment of error, which challenges the trial court's determination that the agreement was too indefinite to be legally enforceable.

Affirmed.