Argued October 7, 1975, reversed and remanded January 15, 1976

WITTICK et ux, *Appellants,*
*v.*
MILES, *Respondent.*

545 P2d 121

*James C. Lynch,* of Conn, Lynch & Story, Lakeview, argued the cause and filed briefs for appellants.

*Forrest E. Cooper,* Lakeview, argued the cause for respondent. With him on the brief was Vernon W. Robinson, Bend.

McALLISTER, J.

## McALLISTER, J.

The plaintiffs, George and Beverly Wittick, husband and wife, filed this suit asking for specific performance of a land sale contract for the purchase of certain real and personal property in Lake County. After a hearing on the merits the trial judge dismissed the case with prejudice. Plaintiffs have appealed.

The suit was originally filed on February 19, 1973, against Merritt Parks as personal representative of the estate of Charles Miles. On June 4, 1973 Merritt Parks resigned and Roberta Miles was appointed personal representative of the estate and was substituted as the party defendant in this case. A demurrer to the complaint was sustained on the ground that plaintiff had not alleged payment of the purchase price into court. Plaintiffs appealed to this court where we held that payment into court was not required and remanded the case for trial. 268 Or 451, 521 P2d 349 (1974).

The case arose out of the following facts. Charles Miles died testate on January 8, 1972. The principal asset of his estate was a 240 acre cattle and hay ranch in Lake County. Pursuant to the will Merritt Parks was appointed personal representative of the estate. At the time of Charles Miles' death there was an outstanding recorded leasehold interest in the ranch for a period of six more years.

On August 2, 1972 the plaintiffs signed and delivered to an agent of Merritt Parks an earnest money receipt for the purchase of the ranch, farm and irrigation equipment, livestock and crops for a total purchase price of $75,000. At the time the receipt was signed plaintiffs paid $6,000 as an earnest money deposit. Subsequently Parks signed the earnest money receipt. On September 1, 1972 pursuant to the agreement, plaintiffs took possession of the ranch and paid an additional $16,500 on the purchase price. Plaintiffs were ready, willing and able to pay the balance of $52,500 upon tender of a deed and title insurance as

[ 3 ]

required by the agreement. Parks refused to perform, repudiated the agreement, and returned to plaintiffs the total of $22,500, which had been paid by plaintiffs. Plaintiffs thereupon filed suit, asking for specific performance and attorney fees.

Defendant admitted the execution of the earnest money agreement, but defended on the ground that specific performance was impossible and inequitable. Defendant claimed that Parks, the original personal representative, had breached his fiduciary duty to the beneficiaries of the estate by offering to sell the ranch to the plaintiffs at a price below the fair market value and by offering the plaintiffs a fee simple title free of encumbrances while aware of the existence of a lease and without ascertaining the cost to the estate of extinguishing the leasehold interest. Defendant contended that a decree of specific performance would force her to breach her fiduciary duty to the beneficiaries.

After a trial on the merits the court on December 18, 1974 dismissed the complaint. The court declined to rule on whether or not there was a binding contract between the parties. Instead, the court held that even if there was a valid contract specific performance was not appropriate under the facts of this case. The court found that specific performance would be impossible because of the existence of the leasehold interest. The court further found that specific performance would be inequitable because of a gross inadequacy of consideration to the injury of innocent parties, namely, the beneficiaries of the estate. The court acknowledged that the personal representative did not need court approval to sell the property in question, but held that it was still the right of the court to consider adequacy of consideration in determining whether or not to grant specific performance.

Since this is a suit in equity we review de novo on the record. ORS 19.125(3).

The first issue is whether the parties agreed that

[ 4 ]

the termination of the leasehold estate was a condition precedent to the validity of the earnest money agreement. The trial court did not decide this issue because it held that its finding that specific performance was neither possible nor equitable disposed of the case. The holding of the trial court that plaintiffs would have to seek their remedy at law was in error.

Once equity has jurisdiction over a controversy it should proceed to decide the case and award complete relief even though the rights of the parties are strictly legal and the final remedy is of a kind normally granted by a court of law. *Walker v. Mackey et al,* 197 Or 197, 209-210, 251 P2d 118, 253 P2d 280 (1952), and authorities there cited. If either specific performance or partial performance is impossible, impracticable, or unjust, the equity court retains jurisdiction to award plaintiff damages. *Walker v. Mackey,* supra at 209.

Plaintiff George Wittick testified that he knew of the lease before the earnest money receipt was signed, but that he was told that the estate would buy out the lessees. The real estate broker who handled the sale for the seller was also told that the lease would be terminated and that the sale to the plaintiffs would be of the ranch, free of all encumbrances. The attorney who represented the seller Parks, the original personal representative, testified he was handling a "package" for the estate, the sale of the ranch and the termination of the lease. There was no testimony by either Parks or any of his agents or the plaintiffs that the sale was contingent on the termination of the lease at a reasonable price. In fact, plaintiffs took possession of the ranch pursuant to the agreement on September 1, 1972 before the lease was terminated. Plaintiffs put the lessees on the payroll, filed a business name, started a bookkeeping system, took miscellaneous equipment to the ranch, branded some cattle, and worked on the ranch every weekend in September. The earnest money receipt clearly stated that the conveyance was free of all encumbrances and no mention was made on the receipt of the lease or any condition

precedent pertaining thereto. In view of this and other evidence we hold that the parties did not agree that the termination of the leasehold estate was a condition precedent to the validity of the earnest money agreement.

In view of our holding, we need not consider whether the parol evidence rule prevents consideration of an oral condition precedent agreed to by the parties if it is inconsistent with the writing. See, however, *J & J Construction Co. v. Mayernik,* 241 Or 537, 539, 407 P2d 625 (1965).

The second issue is whether the existence of the leasehold interest makes the granting of equitable relief impossible. We hold that it does not.

Either party to a contract for the sale of land generally may have specific performance of the contract. *Re Estate of Denning,* 112 Or 621, 628, 229 P 912 (1924). The granting of specific performance, however, is not a matter of grace, but of sound judicial discretion, and is "governed by the established principles and rules which constitute the body of equity jurisprudence." *Temple Enterprises v. Combs,* 164 Or 133, 158, 100 P2d 613, 128 ALR 856 (1940); *Anderson v. Allison,* 256 Or 116, 123, 471 P2d 772 (1970); *Renard v. Allen,* 237 Or 406, 417, 391 P2d 777 (1964). If the written contract provides that the vendor shall convey the premises free from encumbrances, it is immaterial that the purchaser had knowledge, at the time of contracting, that there was an encumbrance on the property. The vendor assumed the risk of acquiring clear title and the purchaser has the right to insist on the terms of the contract, *Crahane et al v. Swan,* 212 Or 143, 154-155, 318 P2d 942 (1957). Where the defect in title is extreme purchaser may be denied complete specific performance, but he is entitled to receive such partial performance as the vendor can give. 11 Williston on Contracts (3d ed) 903-904, §1436; Fry, Specific Performance (6th ed) 587, §1267. Equitable compensation

is the remedy in equity where complete performance is impractical. *Winters v. Shelton et ux,* 225 Or 104, 108, 357 P2d 284 (1960); Restatement of Contracts 659, §365. Equitable compensation is not synonymous with damages at law for breach of contract; it is given ancillary to specific performance or as a modification of specific performance. *Caveny v. Asheim et al,* 202 Or 195, 217-218, 274 P2d 281 (1954).

■   In a case such as this where the court cannot decree specific performance because of an interest in the property held by a third party not before the court, equity does retain jurisdiction to give the plaintiff the relief to which he is entitled. *Walker v. Mackey,* supra, 197 Or at 210. Partial performance, i.e., conveyance of the land with the outstanding leasehold interest and compensation in the form of an abatement of the purchase price would be the appropriate remedy in this case. *Caveny v. Asheim,* supra, 202 Or at 220. This issue of the effect of the outstanding lease may be moot since the plaintiffs, in their brief, state that the lease had been terminated during the pendency of this appeal and that statement has not been challenged by the respondent.

■   The third issue is whether the sale price of $75,000 was grossly inadequate consideration for the property purchased. The general rule is that mere inadequacy of consideration is not sufficient in itself to prevent specific performance. *Van Horn Construct'n Corp. v. Joy et ux,* 186 Or 473, 489, 207 P2d 157 (1949). Comment, Specific Performance—Inadequacy of Consideration—Defense, 10 Or L Rev 283, 285; 5A Corbin on Contracts 223, §1165, where the rule is stated as follows:

> "It is the generally prevailing rule that mere inadequacy of consideration, unaccompanied by other facts indicating artifice, sharp practice, hardship, advantage taken of misfortune or ignorance, and the like, is not sufficient in itself to prevent specific enforcement. * * *"

[ 7 ]

It is not enough for it to have been a bad bargain. *Shell Oil Co. v. Boyer,* 234 Or 270, 277, 381 P2d 494 (1963); 5A Corbin on Contracts 209-210, §1162.

In *Moyer et ux v. Ramseyer et al,* 226 Or 122, 135, 359 P2d 407 (1961), this court said:

> "* * * An improvident agreement is no less binding than a prudent one if otherwise free from defect."

This court in *Eldridge et al v. Johnston,* 195 Or 379, 402-403, 245 P2d 239 (1952), cited with approval the following rule from 3 Pomeroy, Equity Jurisprudence (5th ed) 637, §927, as follows:

> "The following seems to be the true rationale of the doctrines concerning inadequacy of price: Whenever it appears that the parties have knowingly and deliberately fixed upon any price, however great or however small, there is no occasion or reason for interference by courts, for owners have a right to sell property for what they please, and buyers have a right to pay what they please. But where there is no evidence of such knowledge, intention, or deliberation by the parties, the disproportion between the value of the subject-matter and the price may be so great as to warrant the court in inferring therefrom the *fact* of fraud. Such a gross inadequacy or disproportion will call for explanation, and will shift the burden of proof upon the party seeking to enforce the contract, and will require him to show affirmatively that the price was the result of a deliberate and intentional action by the parties * * *."

The following evidence was adduced at trial on the adequacy of consideration. Parks, the original personal representative, had valued the land at $50,000, the irrigation and other farm equipment at $10,000, and the cows and bulls at $15,000, for a total of $75,000. Defendant's appraisal valued the land and irrigation equipment at $78,000, the farm equipment at $6,000 and the cows and bulls at $18,000, for a total of $102,000. There was also evidence that several persons, including the lessees and one beneficiary of the estate, were offered the property for $75,000 and did not accept the offer. The plaintiffs had been looking for a ranch in the area and had been in contact with

[ 8 ]

the realty company. Parks' attorney had listed the property with the realty company for $75,000 cash or $85,000 on an instalment contract. The plaintiffs had originally agreed to pay $85,000 and had signed an earnest money receipt for that amount on July 15, 1972. The need of the estate for a larger down payment in order to have money to acquire the leasehold interest resulted in plaintiffs opting to pay cash and signing a new agreement on August 2, 1972.

The fact that the lessees apparently increased their demand for termination of the lease made the sale less profitable to the estate. Facts existing when the bargain was made or occurring thereafter making performance more difficult or expensive do not discharge a contract. Restatement of Contracts 882, §467.

There were no allegations of fraud or mistake. Parks, through his agents, dealt with the plaintiffs at arm's length in negotiating the sale for $75,000. In view of this and other evidence, we find that the sale price of $75,000 was not grossly inadequate consideration for the property.

The defendant also contends that a decree of specific performance will force her to breach her fiduciary duty to the beneficiaries of the estate. We find no merit in this contention.

Under the Oregon Probate Code a personal representative has the power to sell, mortgage, lease or otherwise deal with property of the estate without notice, hearing, or court order. ORS 114.325(1). The personal representative's powers over title to decedent's property are those of an absolute owner, but at the same time he is trustee for the beneficiaries of the estate. Zartman, An Illinois Critique of the Uniform Probate Code, 1970 Ill L Forum 413, 502. The purpose of the Probate Code is to facilitate prompt and economic administration of estates. It is necessary for third parties to be able to deal with the personal representative without concern for his authority or duty to

[ 9 ]

the beneficiaries. Mapp, The 1969 Oregon Probate Code and Due Process, 49 Or L Rev 345, 367, 372 (1970). Therefore, the personal representative has the power to transfer good title to a bona fide purchaser even though the conveyance may be improper as without authority or against the best interests of the estate. ORS 114.385; Mapp, op. cit. 350. The beneficiaries' remedy is not to void the transaction but to seek damages for the personal representative's breach of his fiduciary duty. ORS 114.395.

■ The sales price may have been inadequate, but it was not so inadequate as to relieve defendant from liability on a contract voluntarily entered into. Plaintiffs are entitled to specific performance of the contract and the fact that the vendor is a personal representative rather than an ordinary seller does not defeat that right.

The decree is reversed and the case remanded for entry of a decree in accordance with this opinion.