Argued and submitted February 2, reversed and remanded for entry of judgment
requiring defendant to convey title to plaintiff upon tender of purchase price
June 13, 2007

VIEW POINT TERRACE, LLC,
an Oregon limited liability company,
*Plaintiff-Appellant,*

*v.*

Alena McELROY,
*Defendant-Respondent,*

*and*

FAIRWAY COMMERCIAL MORTGAGE,
*Defendant.*

Multnomah County Circuit Court
040302999; A128597

160 P3d 1023

Timothy J. Vanagas argued the cause for appellant. With him on the opening brief was Samuel T. Stanke.

John M. Berman argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Deits, Judge pro tempore.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff appeals after the trial court dismissed its claim for specific performance of an agreement for plaintiff to buy and defendant to sell real property in southwest Portland. On *de novo* review, ORS 19.415(3), we reverse.

Defendant owns three undeveloped lots in the John's Landing area. On April 28, 2003, plaintiff, a limited liability company, sent a letter through its representative, Everett Smyth, to defendant, offering $120,000 for the three lots. According to the offer, the $120,000 would be paid to Fairway Commercial Mortgage (Fairway), because the lots secured a loan from Fairway to defendant. The offer stated that "[w]e will require basic title insurance insuring us clear title, which is a cost to the seller." The offer also stated that "timing is very important on this transaction" and "[w]e agree to close this transaction on or before May 31, 2003, contingent upon the completion of our loan by then." The offer did not otherwise contain a specific "time is of the essence" clause. Defendant wrote in the requirement that plaintiff pay the prepayment penalty on the Fairway loan, and signed the letter. Smyth then initialed that change.

After the agreement was signed, plaintiff received a letter from defendant's husband, which stated that he and defendant were going through a divorce and that he had filed a notice of *lis pendens* on March 11, 2003, which encumbered title to the lots. Defendant did not know of the *lis pendens* notice when she signed the agreement. Smyth spoke with defendant several times between April 28, 2003, and the end of May regarding the notice. Defendant told Smyth that it would not be a problem for her to furnish clear title.

On May 22, 2003, plaintiff obtained a loan commitment from American Pacific Bank for $614,250, in order to refinance a prior $500,000 loan with the bank, plus $114,250 to purchase defendant's lots. In order to complete the loan, plaintiff was required to pay a nonrefundable "Commitment Fee" of $3,075, which was due "upon acceptance of this commitment." The commitment letter included such requirements as "Bank to be provided with a Resolution authorizing

the LLC to borrow from American Pacific Bank," and financial statements for "Borrower and Guarantors." It also stated that "Settlement must take place no later than June 22, 2003. In the event this loan does not close by such date American Pacific Bank may, at its option, terminate this Commitment under the terms specified." The commitment letter from the bank also stated, "This Commitment has been issued in accordance with the information supplied and shall expire if not accepted by May 29, 2003." Plaintiff did not fulfill the loan requirements with American Pacific Bank by June 22, 2003.

On June 13, 2003, defendant went to the title company at which an escrow had been opened and signed closing documents. She also deposited a check for $1,680.71 for property taxes and closing costs. At the time, defendant gave no indication to the escrow agent that she considered the time for closing the transaction to have expired. The escrow officer told defendant that even though she was signing the closing documents, the title company would not close the transaction because of the *lis pendens* notice. Subsequently, plaintiff sent defendant a letter on June 24, 2003, stating that closing on the lots "has been postponed until such time as you can deliver a clear title by removing the cloud that has been placed on it," and informing her that plaintiff was ready to close the transaction as soon as defendant could provide clear title. Defendant, however, denied receiving the letter. During the next several months, Smyth called defendant several times to find out whether the *lis pendens* issue had been resolved. Each time Smyth called, defendant told him that her attorney and her husband's attorney were working to resolve the issue. Defendant and her husband eventually reconciled, and the dissolution of marriage proceeding was dismissed in October 2003, but defendant did not inform plaintiff of that fact. The title company later canceled the title report and returned defendant's money to her.

In February 2004, Smyth called defendant again to see whether the *lis pendens* issue had been resolved. Defendant told Smyth that the land was no longer for sale and that she considered the agreement a "dead deal." Smyth testified that defendant did not assert at any time that the agreement was unenforceable because closing did not occur by May 31,

2003. In March 2004, plaintiff discovered that defendant's dissolution of marriage proceeding had been dismissed. Immediately thereafter, plaintiff sued for specific performance, alleging that it had fully performed under the letter agreement and that it "hereby offers to pay the full purchase price in cash in exchange for a deed."

The matter went to trial, and the trial court ruled in favor of defendant, finding that she had attempted to perform on June 13, 2003, by offering to convey all of the interest she had in the lots, and that, under *Kinney v. Schlussel et al.*, 116 Or 376, 239 P 818 (1925), and *Wittick v. Miles*, 274 Or 1, 545 P2d 121 (1976), plaintiff's options on that date were to accept defective title and sue for damages, or to give up its right to later sue for specific performance. The trial court thereafter entered a general judgment in favor of defendant.

On appeal, plaintiff asserts that it is entitled to specific performance because it did not reject any offer by defendant to convey clear title in accordance with the terms of the agreement or agree to accept defective title at an appropriately abated price. In addition to urging that we affirm based on the trial court's reasoning, defendant responds that plaintiff is not entitled to specific performance because two express conditions to performance in the parties' agreement did not occur: (1) defendant had no ability to convey clear title within the time for performance stated in the agreement; and (2) plaintiff failed to procure a loan to pay the purchase price by May 31, 2003.

We review a claim for specific performance *de novo*, ORS 19.415(3), and we are not bound by the trial court's findings of fact and conclusions of law, nor by the legal theory that the trial court adopted. *Mohr v. Lear*, 239 Or 41, 48, 395 P2d 117 (1964). Generally, a claim for specific performance must be proved by clear and convincing evidence. *Murray v. Laugsand*, 179 Or App 291, 294, 39 P3d 241 (2002). To prevail, a plaintiff must show that it has a valid, legally enforceable contract and that it is ready, willing, and able to perform its obligations under the contract. *Gaffi v. Burns*, 278 Or 327, 333, 563 P2d 726 (1977); *Beaty v. Oppedyk*, 212 Or App 615, 621, 159 P3d 1157 (2007).

■ Initially, we conclude that there existed between the parties a legally enforceable contract. In substance, the agreement called for the payment of $120,000 and the conveyance of clear title in the property to plaintiff. Moreover, at trial, Smyth testified that plaintiff had obtained a loan commitment from American Pacific Bank for the purchase, and that the loan was ready to be funded upon execution of the loan documents in June 2003. He also testified that plaintiff had the present ability to pay $120,000 in cash, should the trial court order specific performance. There is no evidence to contradict Smyth's testimony in the record, and we are persuaded that plaintiff had the capability to perform both in June 2003 and at the time of trial. Defendant argues, however, that the trial court's ruling was correct because plaintiff failed to complete its loan by May 31, 2003, and the *lis pendens* notice prevented defendant from obtaining title insurance, both of which were conditions upon which the sale was predicated.

■ Generally, "a failure to complete a sale of land within the contractual period does not prevent a court from awarding specific performance" where there is no "time is of the essence" clause. *McPherson v. Dauenhauer*, 187 Or App 551, 556, 69 P3d 733, *rev den*, 335 Or 655 (2003). Here, however, defendant argues that the agreement required the parties to close the transaction by May 31, 2003, or the agreement became unenforceable. Notwithstanding defendant's interpretation of the parties' written agreement, the evidence demonstrates that the parties acted to extend the time for closing. For example, defendant never indicated to the escrow office that the time for performance under the agreement had expired. Rather, she went to the escrow office on June 13, 2003, to sign closing documents, and she deposited a check for taxes and closing costs with the escrow company. Also, plaintiff sent defendant a letter on June 24, 2003, stating that closing was postponed until the *lis pendens* issue was resolved, and, thereafter, the parties stayed in contact with each other regarding the agreement by phone. In light of the conduct of the parties, it is apparent that neither party sought to enforce the May 31 deadline, even if that had been the intent of their original agreement. *See Patterson v.*

*Amundson*, 201 Or App 486, 496, 119 P3d 264 (2005) (holding that, by his actions, the seller waived the time is of the essence provision in lease-with-purchase agreement by not demanding a timely closing; indeed, the seller negotiated with the buyers about the condition of property for over a year, accepted the buyer's monthly payments for nearly seven years, and never reinstated the time is of the essence provision).

Secondly, there is no evidence that plaintiff waived the condition that defendant provide clear title, or that defendant, by signing the closing documents on June 13, 2003, was repudiating her obligation to provide clear title and was offering to convey only what interest she had in the lots. Defendant was aware of the *lis pendens* issue at the time she signed the escrow documents, but told plaintiff that she was working with her husband to resolve the issue. She continued to assure Smyth for a number of months that she was attempting to resolve the *lis pendens* issue. It would be inequitable to release defendant from her obligation under the agreement when it was her own actions that led to the extension of the time for closing. *Edmunds v. Edmunds*, 186 Or App 585, 590-91, 64 P3d 1189 (2003).

Finally, the trial court's reliance on the rule of *Kinney* and *Wittick* was misplaced. In *Wittick*, the buyers sought specific performance after the seller refused to perform under the agreement. The seller argued that it could not convey clear title because of a leasehold interest in the property held by a third party. The court could not decree specific performance because of the third-party interest; therefore, the court held that it was equitable to order partial performance, that is, conveyance of the property with the outstanding interest and compensation to the buyers in the form of an abatement of the purchase price. *Wittick*, 274 Or at 7. In *Kinney*, the sellers furnished an abstract of title that failed to show that the sellers had "good and merchantable title," and showed a title defect that the sellers could not cure. The buyer refused to accept title to the property. *Kinney*, 116 Or at 383. The buyer later sued for specific performance, even though the title defect remained. *Id.*

Here, in contrast to the above cases, plaintiff never refused to accept title to the property, but relied on defendant's assurances that she was working to clear title. Plaintiff sought specific performance after the parties mutually agreed by their conduct to extend the closing date so that defendant could provide clear title. Moreover, defendant's husband held no interest of record in the property after the *lis pendens* notice was removed. Once that notice was removed, defendant was able to convey clear title in accordance with her agreement.

In summary, plaintiff has demonstrated on the record before us that the closing date for the purchase of defendant's property was extended by the parties' mutual conduct until such time as defendant could furnish clear title. Plaintiff has also demonstrated that it was able to pay the cash purchase price at such time that defendant was able to perform. Plaintiff's evidence thus satisfies the requirements for specific performance.

Reversed and remanded for entry of judgment requiring defendant to convey title to plaintiff upon tender of purchase price.